UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VANGUARD NATIONAL TRAILER CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Court No. 24-00034 |

## COMPLAINT

Pursuant to Rule 3(a)(3) of the Rules of the U.S. Court of International Trade ("USCIT"), Plaintiff Vanguard National Trailer Corporation ("Vanguard" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

### ADMINISTRATIVE DECISIONS TO BE REVIEWED

1. Plaintiff contests (a) the affirmative determination as to "evasion" issued by U.S. Customs and Border Protection's ("CBP") Trade Remedy Law Enforcement Directorate ("TRLED") on August 21, 2023, under the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517(c), in Case Number 7509 ("*TRLED Determination*"); and (b) the administrative review decision issued by CBP's Office of Regulations & Rulings ("OR&R") on December 22, 2023, under 19 U.S.C. § 1517(f), affirming the *TRLED Determination* ("*OR&R Determination*") (collectively, "CBP's EAPA decision").

### JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. § 1581(c) to review any civil action commenced under section 517(g) of the Tariff Act of 1930, as amended (19 U.S.C. § 1517(g)).

Plaintiff is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for judicial review by the U.S. Court of International Trade of the *TRLED Determination* issued pursuant to 19 U.S.C. § 1517(c) and the *OR&R Determination* issued pursuant to 19 U.S.C. § 1517(f).

## STANDING OF PLAINTIFF

3.  As the importer of record of the merchandise at issue and the target of EAPA Case Number 7509, Vanguard is both an "interested party" under 19 U.S.C. § 1517(a)(6)(i) and a "party to the investigation" under 19 C.F.R. § 165.1.  Vanguard participated in the EAPA investigation through the submission of factual information and written argument.  Moreover, Vanguard is the "person determined to have entered . . . covered merchandise through evasion" in EAPA Case Number 7509, and is adversely affected or aggrieved within the meaning of 5 U.S.C. § 702 by virtue of CBP's interim and final decisions that Vanguard's imports of the merchandise at issue are subject to antidumping and countervailing duties.  Accordingly, under 19 U.S.C. § 1517(g)(1), Vanguard may seek judicial review of both TRLED's evasion determination under 19 U.S.C. § 1517(c) and OR&R's administrative review decision under 19 U.S.C. § 1517(f), and has standing pursuant to 28 U.S.C. § 2631(i).

## TIMELINESS OF THIS ACTION

4.  An action under 28 U.S.C. § 1581(c) based on 19 U.S.C. § 1517 must be commenced within thirty (30) business days after OR&R completes its administrative review under 19 U.S.C. § 1517(f) by the concurrent filing of a Summons and a Complaint.  *See* 19 U.S.C. § 1517(g)(1); USCIT Rule 3(a)(3).  On December 22, 2023, OR&R sent Vanguard an email transmitting its final administrative determination in EAPA Case Number 7509 (also dated December 22, 2023).

2

The thirtieth business day after December 22, 2023 (excluding six Saturdays, six Sundays, and three federal holidays) falls on February 7, 2024.  Vanguard, therefore, is timely filing its Summons and Complaint within the deadline set by 19 U.S.C. § 1517(g)(1).

## PROCEDURAL HISTORY AND BACKGROUND

5.  *The AD/CVD Orders' Original Scope:*  On May 24, 2019, the U.S. Department of Commerce ("DOC") issued antidumping duty ("AD") and countervailing duty ("CVD") orders on imports of certain steel wheels 22.5 and 24.5 inches in diameters (*i.e.*, truck wheels) from the People's Republic of China ("China").  *Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24098 (Dep't Commerce May. 24, 2019) ("*AD/CVD Orders*").

6.  A truck wheel consists of two essential components: a rim and a disc.  The rim comprises the perimeter of the wheel and supports the tire when it is attached to the wheel, while the disc serves as the center portion of the wheel without the rim.

7.  The *AD/CVD Orders* cover wheels, rims, and discs imported from China, as well as "rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims and discs from China*** to form a steel wheel . . . ."  84 Fed. Reg. at 24100 (emphasis added).

8.  At the time of initiation in April 2018, the proposed scope of the AD/CVD investigations did not include language covering truck wheels, rims, or discs from China that undergo further processing in a third country.  *See Certain Steel Wheels from the People's Republic of China*, 83

3

Fed. Reg. 17798, 17802 (Dep't Commerce Apr. 24, 2018) (AD initiation).[1]  Later, in December 2018, Petitioners Accuride Corporation ("Accuride") and Maxion Wheels Akron LLC ("Maxion") asked DOC to include the following language in the scope description: "The scope includes rims and discs that have been further processed in a third country, including, but not limited to, the welding and painting of rims and discs to form a steel wheel . . . ." *Certain Steel Wheels from the People's Republic of China*, 84 Fed. Reg. 11746 (Dep't Commerce Mar. 28, 2019) (final AD determ.), and accompanying Issues and Decision Memorandum at 7 ("*Final AD IDM*").

9.  In response to Petitioners' request, Zhejiang Jingu Company Limited ("Zhejiang Jingu"), a Chinese mandatory respondent in the AD/CVD investigations, countered that Petitioners' proposed scope language was "overly broad and vague, potentially expanding the scope to include other merchandise that also originates in third countries (*e.g.*, the language does not explicitly require that ***both the rim <u>and</u> disc be produced <u>in China</u>*** for China to be considered the country of origin)." *Final AD IDM* at 8 (emphasis added).  In response, DOC stated:

> *{W}e agree with Zhejiang Jingu* that the proposed scope amendment should include further clarifying language. . . . {W}e understand the petitioners' statements in their scope comments filed in December 2018 to be requesting that ***rims <u>and</u> discs <u>from China</u>*** that have been further processed in a third country into finished steel wheels be included within the scope.  We have, therefore, clarified the petitioners' proposed scope language to reflect the petitioners' intention.

*Final AD IDM* at 12 (emphasis added).  Specifically, DOC added the qualifier "***from China***" to Petitioners' proposed scope language as follows: "The scope includes rims and discs that have

---

[1] The scope language and DOC's analysis of the scope are identical in the AD and the CVD investigations.  Consequently, for ease of reference, this Complaint refers only to the relevant citations from DOC's AD investigation.

4

been further processed in a third country, including, but not limited to, the welding and painting of rims and discs *from China* to form a steel wheel . . . ." *Id*. at 9 (emphasis added).

10. ***Asia Wheel's Production in Thailand:***  Asia Wheel Co., Ltd. ("Asia Wheel"), an affiliated company of Zhejiang Jingu, is located in Thailand and is the manufacturer and exporter of the truck wheels Vanguard imported. To manufacture the truck wheels, Asia Wheel produced rims in its factory in Thailand using rectangular steel plates sourced from China and a third country; welded the Thai-origin rims to Chinese-origin discs to form steel wheels; and then painted and packaged the finished steel wheels ("Thai Truck Wheels"). *See OR&R Determination* at 11.

11. ***EAPA Allegation, Initiation, and Interim Measures:***  On July 17 and 27, 2020, pursuant to 19 U.S.C. § 1517 and 19 C.F.R. § 165.11, Accuride and Maxion (collectively, "Allegers") submitted an allegation to CBP requesting an EAPA investigation of Vanguard. *See* CBP Letter, RE: Notice of Initiation of Investigation and Interim Measures – EAPA Case Number 7509 (Nov. 23, 2020) at 2 ("*EAPA Initiation Notice*") at 2. Accuride and Maxion alleged transshipment only, claiming that Vanguard imported truck wheels produced by Chinese manufacturer Zhejiang Jingu that were transshipped to the United States through Asia Wheel in Thailand. *See id*. The Allegers also claimed that Vanguard entered the wheels into the United States as products of Thailand, thereby "evading" the *AD/CVD Orders*. *See id*.

12. On August 18, 2020, TRLED determined that DSMC's allegation "reasonably suggest{ed}" that "evasion" had occurred, and initiated an EAPA investigation, Case Number 7509, pursuant to 19 U.S.C. § 1517(b)(1) and 19 C.F.R. § 165.15. *See EAPA Initiation Notice* at 2.

5

13.     On November 23, 2020, TRLED issued the *EAPA Initiation Notice*. CBP determined that "reasonable suspicion exist{ed} that Vanguard imported steel wheels into the United States that were transshipped from China through Asia Wheel in Thailand, and should have been subject to the {*AD/CVD Orders*}." *EAPA Initiation Notice* at 7. As interim measures under 19 U.S.C. § 1517(e), CBP suspended liquidation of Vanguard's imports of truck wheels from Asia Wheel (*i.e.*, Thai Truck Wheels) that entered on or after August 18, 2020, and extended the liquidation period for each unliquidated entry made before that date – retroactively subjecting Vanguard's imports to AD and CVD liability in excess of 680% of the value of the imported merchandise. *See id.* at 8; *AD/CVD Orders*, 84 Fed. Reg. at 24098-24099.

14.     ***Asia Wheel's Scope Ruling Request and DOC's Scope Inquiry:***  While EAPA Case Number 7509 was ongoing, on February 11, 2021, Asia Wheel requested that DOC issue a scope ruling to confirm that the Thai Truck Wheels are not covered by the scope of the *AD/CVD Orders*. Specifically, Asia Wheel asked DOC to confirm that the Thai Truck Wheels, which Asia Wheel sold to Vanguard, are not covered by the scope of the *AD/CVD Orders*.

15.     Although Asia Wheel reasonably believed that the Thai Truck Wheels are outside the scope of the *AD/CVD Orders* (based on the plain language of the scope and DOC's clarification of the scope during the original AD/CVD investigations), on February 11, 2021, the company requested a DOC scope ruling so that DOC could confirm to CBP that the products were outside the scope in light of CBP's initiation of EAPA Case Number 7509. In response to Asia Wheel's request, DOC initiated a scope inquiry on May 12, 2021.

16.     ***EAPA Document Production:***  From January through May 2021, Vanguard and Asia Wheel timely responded to TRLED's requests for information ("RFI") and supplemental RFIs in

6

the EAPA investigation. In addition, on March 5, 2021, Vanguard voluntarily submitted factual information pursuant to 19 C.F.R. § 165.23(b) and 165.23(c)(2). In their submissions to CBP, Vanguard and Asia Wheel demonstrated that, at Asia Wheel's plant in Thailand, Asia Wheel used rectangular steel plates from China and a third country to produce rims, joined the Thai-origin rims with Chinese-origin discs to form truck wheels, and performed finishing operations (painting) to complete the wheels. In addition, Vanguard's and Asia Wheel's submissions addressed and rebutted inaccuracies in CBP's grounds for imposing interim measures.

17. ***CBP's EAPA Scope Referral:*** On June 9, 2021, CBP asked DOC to determine, in accordance with 19 U.S.C. § 1517(b)(4), whether the Thai Truck Wheels imported by Vanguard are "covered merchandise" within the meaning of 19 U.S.C. § 1517(a)(3). CBP Letter, RE: Covered Merchandise Referral Request for EAPA Investigation 7509 (June 9, 2021) ("*CBP Scope Referral*"). In the letter to DOC, CBP explained it was "unable to determine whether the steel wheels produced by Asia Wheel from imported rectangular steel plates from China and a third country that Asia Wheel converts into rims in Thailand and welds with Chinese-origin discs in Thailand are covered merchandise." *Id.* at 3. Therefore, CBP asked DOC to determine whether such truck wheels are covered merchandise. *See id.*

18. ***DOC's Acknowledgement of the CBP Scope Referral:*** DOC published notice of the *CBP Scope Referral* on July 20, 2021. *Certain Steel Wheels from the People's Republic of China: Notice of Covered Merchandise Referral*, 86 Fed. Reg. 38270 (Dep't Commerce July 20, 2021) ("*Notice of CBP Scope Referral*"). In the notice, DOC stated that the Thai Truck Wheels are "already the subject of a scope ruling request previously submitted to Commerce by Asia

7

Wheel," and therefore that DOC would respond to CBP "{b}ased on {its} determinations in the ongoing scope inquiries of the Orders{.}" *Id.* at 38271.

19. **DOC's Final Scope Ruling:**  On June 7, 2023, more than two years after it had initiated the scope inquiry and having given itself *sixteen* extensions of the deadline, DOC issued the final scope ruling in response to Asia Wheel's February 11, 2021, request.  *See* DOC Letter, RE: Covered Merchandise Referral Regarding EAPA Investigation No. 7509 (June 9, 2023) at Attachment (DOC Memorandum, RE: Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (A-570-082, C-570-083) (June 7, 2023) ("*Final Scope Ruling*")).  DOC determined that the Thai Truck Wheels are subject to the scope of the *AD/CVD Orders*.  *See Final Scope Ruling* at 1, 16, 25.

20. DOC did not determine that the Thai Truck Wheels are covered merchandise based on the plain language of the scope of the *AD/CVD Orders*.  Rather, DOC explained that, because the "plain language of the scope is ambiguous" as to whether such wheels – where only one of the two wheel components was from China – are subject to the scope of the *AD/CVD Orders*, it was appropriate to conduct a "substantial transformation" analysis to answer the question.  *Final Scope Ruling* at 9.  DOC further claimed that, in the underlying AD/CVD investigations, it "declined to clarify the scope language as requested by the respondents" and "did not automatically exclude an array of products, such as steel wheels assembled in a third country of Chinese-origin and third country components."  *Id*.

21. Next, DOC found that the Chinese-origin components (discs) did not undergo substantial transformation in Thailand, such that China was the country of origin for the Thai Truck Wheels.  *See Final Scope Ruling* at 16-25.

AMERICAS 126174076

22. With respect to liquidation, DOC stated that it "intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended." *Final Scope Ruling* at 27. Alternatively, if liquidation of such entries of Thai Truck Wheels was not already suspended, DOC stated that it "intend{ed} to instruct CBP to suspend liquidation of entries of products found to be covered by the scope of the *Orders* effective to the date {it} initiated an inquiry upon Asia Wheel's Scope Ruling Request." *Id*. In this regard, DOC found that importers had "fair warning" that Thai Truck Wheels are subject to the *AD/CVD Orders* as of May 12, 2021, the date DOC initiated the scope inquiry:

> Any ambiguity that the *specific* steel wheels assembled in Thailand from Chinese-origin discs and Thai-origin rims manufactured from rectangular steel plates sourced from China or a third country may be subject to liabilities was established by the May 12, 2021, Asia Wheel scope inquiry initiation memorandum, and the explicit mention of the merchandise in question therein constituted fair warning to any reasonably informed importer.

*Final Scope Ruling* at 28.

23. ***DOC's Response to the CBP Scope Referral:*** On June 9, 2023, DOC responded to the *CBP Scope Referral*. *See* DOC Letter, RE: Covered Merchandise Referral Regarding EAPA Investigation No. 7509 (June 9, 2023). In the response, DOC simply transmitted the *Final Scope Ruling* to CBP.

24. On June 27, 2023, Vanguard timely submitted its written argument in EAPA Case Number 7509 in accordance with 19 C.F.R. § 165.26(a). On July 12, 2023, Vanguard timely submitted its response to the Allegers' written argument in accordance with 19 C.F.R. § 165.26(b).

25. ***TRLED's Determination as to "Evasion":*** On August 21, 2023, TRLED issued an affirmative "evasion" determination in EAPA Case Number 7509. *See TRLED Determination*.

AMERICAS 126174076

Based on DOC's *Final Scope Ruling*, TRLED found that the Thai Truck Wheels imported by Vanguard are "covered merchandise" within the meaning of 19 U.S.C. § 1517(a)(3). *See id*. at 9. TRLED further found that, because "Vanguard declared the entries as type 01 consumption entries instead of type 03 AD/CVD entries and misrepresented the country of origin as Thailand rather than China," Vanguard made the entries using false statements, even with respect to entries made before May 12, 2012, the date DOC initiated a scope inquiry to address the Thai Truck Wheels. *Id*. at 9 & 15. Consequently, TRLED found that Vanguard evaded the payment of applicable AD/CVD duties on steel wheels from China. *See id*. at 9.

26. ***OR&R's Administrative Review of TRLED's Determination:***  On October 2, 2023, Vanguard filed a timely appeal for administrative review in accordance with 19 C.F.R. § 165.41. Vanguard argued that it neither imported covered merchandise nor entered the Thai Truck Wheels by means of a material false or omission, particularly because it lacked adequate notice that such wheels were potentially subject to the *AD/CVD Orders* until May 12, 2021, the date DOC initiated a scope inquiry to address the Thai Truck Wheels. In addition, Vanguard argued that CBP's interim measures were rendered invalid upon CBP's realization that it was unable to determine whether the Thai Truck Wheels are covered merchandise, and that CBP conducted the EAPA investigation in a manner that violated Vanguard's due process rights.

27. On December 22, 2023, OR&R issued its decision in response to Vanguard's administrative appeal. First, based on DOC's response to the *CBP Scope Referral*, OR&R found that "the steel wheels Vanguard imported from Asia Wheel are covered merchandise." *OR&R Determination* at 10. OR&R also found that Vanguard entered the wheels by means of material false statements and omissions because "the merchandise was incorrectly entered on type '01'

AMERICAS 126174076

consumption entries instead of on type '03' AD/CVD entries and omitted the relevant AD/CVD case numbers from the entry summary documentation." *Id.* at 10-11. OR&R further determined that Vanguard's material false statements and omissions "interfered with the government's ability . . . to collect the applicable antidumping and countervailing cash deposits due, and to determine and assess future antidumping and countervailing payments." *Id*. at 11. On these grounds, OR&R concluded that "there is substantial evidence that Vanguard entered covered merchandise by evasion." *Id.* In addition, OR&R maintained that CBP's interim measures were valid and that Vanguard's due process concerns were "without merit." *See id.* at 15-16.

## STATEMENT OF CLAIMS

## COUNT 1: "COVERED MERCHANDISE" ERROR

28.  Plaintiff hereby restates and incorporates Paragraphs 1 through 27 by reference.

29.  CBP's determination that Vanguard's imports of truck wheels were "covered merchandise" within the meaning of 19 U.S.C. § 1517(a)(3) is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

30.  The EAPA defines "covered merchandise" as "merchandise that is subject to" an AD or CVD order. 19 U.S.C. § 1517(a)(3). Inherently, a determination of whether imported merchandise is "subject to" an order may also entail ***when*** the merchandise ***became*** subject to the order. In this regard, the Federal Circuit has held that importers must have adequate notice or fair warning before their imports are subjected to AD/CVD liability. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) ("The notice requirement reflects 'the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair

11

warning of the conduct {the order or regulation} prohibits or requires.'"") (quoting *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013)); *AMS Assocs. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013) ("{W}hen Commerce 'clarifies' the scope of an existing antidumping duty order that has an unclear scope, the suspension of liquidation and imposition of antidumping cash deposits may not be *retroactive* but can only take effect 'on or after the date of initiation of the scope inquiry.'") (citing 19 C.F.R. § 351.225(l)).

31.    Here, DOC determined that the *AD/CVD Orders* were ambiguous with respect to coverage of the Thai Truck Wheels, and therefore conducted a substantial transformation analysis to answer the question. *See Final Scope Ruling* at 9. Moreover, DOC determined that importers lacked "fair warning" that Thai Truck Wheels were potentially subject to the *AD/CVD Orders* on truck wheels from China until May 12, 2021, the date DOC initiated a scope inquiry in response to Asia Wheel's request for a scope ruling. *See Final Scope Ruling* at 28.

32.    Because Vanguard lacked fair warning that the Thai Truck Wheels were potentially subject to the *AD/CVD Orders* until May 12, 2021, its imports of such wheels with entry dates before that date are not "covered merchandise." In determining that Vanguard entered covered merchandise before May 12, 2021, CBP abused its discretion and made a determination that is arbitrary and otherwise not in accordance with law. *See Hartford Fire Ins. Co. v. United States*, 918 F. Supp. 2d 1376, 1378 (Ct. Int'l Trade 2013) (stating that the court will find an abuse of discretion where an agency decision is based on an erroneous conclusion of law); *Shandong Dongfang Bayley Wood Co. v. United States*, 375 F. Supp. 3d 1339, 1344 (Ct. Int'l Trade 2019) (stating that a decision is arbitrary and capricious if the agency "'offered an explanation for its

AMERICAS 126174076

decision that runs counter to the evidence before the agency'") (quoting *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

33. Moreover, DOC's *Final Scope Ruling* that the Thai Truck Wheels are subject to the *AD/CVD Orders* on truck wheels from China is unreasonable and on appeal before this court in accordance with 19 U.S.C. § 1517(b)(4)(D). *See Asia Wheel Co., Ltd. v. United States*, Court No. 23-00143.

**COUNT 2: "MATERIAL FALSE STATEMENT OR MATERIAL OMISSION" ERROR**

34. Plaintiff hereby restates and incorporates Paragraphs 1 through 27 by reference.

35. CBP's finding that Vanguard entered covered merchandise by means of "material and false" statements or "material" omissions within the meaning of 19 U.S.C. § 1517(a)(5)(A) is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

36. The Federal Circuit has held that importers must have adequate notice or fair warning before their imports are subjected to AD/CVD liability. *See Tai-Ao*, 983 F.3d at 495; *AMS*, 737 F.3d at 1344. Relatedly, this court has held that a degree of culpability is required for an importer to have made a material "false" statement or omission within the meaning of 19 U.S.C. § 1517(a)(5)(A). *See Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378, 1386 (Ct. Int'l Trade 2022) (holding that CBP's view that the EAPA is a strict liability statute "violates a core maxim of statutory construction" because it "would render {the material false statement or omission provision} a nullity"); *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (Ct. Int'l Trade 2021) (holding that "neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish 'any level of culpability'"); *but see Ikadan Sys. United States, Inc. v. United States*, 639 F. Supp. 3d 1339,

13

1349 (Ct. Int'l Trade 2023) ("EAPA read as a whole supports CBP's strict liability interpretation of the definition of evasion.").

37. Here, Vanguard reasonably understood the third-country-processing provision of the scope of the *AD/CVD Orders*, as well as DOC's clarification of that language in the original AD/CVD investigations, to mean that truck wheels manufactured in third countries are subject to the orders only if both the rims and discs originate "from China." Consequently, Vanguard lacked adequate notice that the Thai Truck Wheels were potentially covered merchandise until May 12, 2021, the date on which DOC initiated a scope inquiry in response to Asia Wheel's request for a scope ruling. Because Vanguard had reasonable grounds to declare the Thai Truck Wheels as type 01 entries (not subject to the *AD/CVD Orders*) up until May 12, 2021, it did not make any material false statements or omissions with respect to entries of the Thai Truck Wheels made before that date.

38. In determining that Vanguard entered covered merchandise by means of material false statements and omissions, CBP abused its discretion and made a determination that is arbitrary and otherwise not in accordance with law. *See Hartford Fire*, 918 F. Supp. 2d at 1378; *Shandong Dongfang*, 375 F. Supp. 3d at 1344.

## COUNT 3: "INTERIM MEASURES" ERROR

39. Plaintiff hereby restates and incorporates Paragraphs 1 through 27 by reference.

40. CBP's decision not to terminate the suspension of liquidation it had implemented as part of interim measures under 19 U.S.C. § 1517(e) was an abuse of discretion and otherwise not in accordance with law.

41. The plain language of the EAPA indicates that CBP may not impose interim measures when it is unable to determine whether the import entries at issue are "covered merchandise" as defined under 19 U.S.C. § 1517(a)(3). Section 517(e) of the EAPA states:

> Not later than 90 calendar days after initiating an investigation under subsection (b) *with respect to covered merchandise*, the Commissioner shall decide based on the investigation if there is a reasonable suspicion that *such covered merchandise* was entered into the customs territory of the United States through evasion and, if the Commissioner decides there is such a reasonable suspicion, the Commissioner shall—
>
> (1) suspend the liquidation of each unliquidated entry of *such covered merchandise* that entered on or after the date of the initiation of the investigation;
>
> (2) pursuant to the Commissioner's authority under section 1504(b) of this title, extend the period for liquidating each unliquidated entry of *such covered merchandise* that entered before the date of the initiation of the investigation . . . .

19 U.S.C. § 1517(e) (emphasis added).

42. The statute's use of "*with respect to covered merchandise*" and "*such covered merchandise*" indicates that CBP cannot impose interim measures if it questions whether the merchandise at issue is subject to the AD/CVD orders in the first place. Based on the plain language of the provision, "*reasonable suspicion*" applies to whether "*such covered merchandise*" was entered through evasion – *not* whether the imports in question are "covered merchandise."

43. Here, CBP announced that it imposed interim measures based on a "reasonable suspicion" that Vanguard had imported *Chinese-origin truck wheels* that were transshipped through Thailand. *See EAPA Initiation Notice* at 7. Later, however, when CBP learned that the truck wheels were manufactured by Asia Wheel in Thailand with Thai-origin rims and Chinese-origin discs, CBP was unable to determine whether the Thai Truck Wheels were covered by the scope of the *AD/CVD Orders* and referred the question to DOC. *See CBP Scope Referral.* At

15

that point, the legal basis for interim measures under 19 U.S.C. § 1517(e) became invalid and CBP could no longer legally maintain the interim measures.

44. Because CBP's maintenance of interim measures was inconsistent with the unambiguous language of 19 U.S.C. § 1517(e), its failure to rescind the interim measures upon issuing a scope referral to DOC was an abuse of discretion and otherwise not in accordance with law. *See Hartford Fire*, 918 F. Supp. 2d at 1378.

## COUNT 4: DUE PROCESS VIOLATION

45. Plaintiff hereby restates and incorporates Paragraphs 1 through 27 by reference.

46. CBP's EAPA decisions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because they resulted from a constitutionally deficient process. CBP conducted this EAPA investigation in a manner that deprived Vanguard of its due process rights. CBP denied Vanguard's counsel access to confidential information relied upon by CBP to initiate the investigation, impose interim measures, and issue an affirmative determination of evasion, contrary to fundamental principles of transparency and fairness. As recognized by the Federal Circuit, CBP cannot lawfully rely on confidential information to make a duty evasion finding against Vanguard without first allowing its counsel to review that information. *See Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1258-59, 1262 (Fed. Cir. 2023). Because CBP deprived Vanguard of its due process rights, CBP's affirmative evasion determination is improper and should be dismissed.

## COUNT 5

47. Plaintiff hereby restates and incorporates Paragraphs 1 through 27 by reference.

48. Because Vanguard and its counsel have not had access to the full administrative record in EAPA Case Number 7509, Vanguard challenges any and all aspects of CBP's EAPA decision on the basis of any additional claims that may arise upon a full review of the administrative record.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)  Enter judgment in favor of Plaintiff;

(B)  Hold and declare that the *TRLED Determination* and *OR&R Determination* are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

(C)  Hold and declare that CBP's failure to rescind interim measures, despite its inability to determine whether Vanguard's imports were "covered merchandise," was an abuse of discretion and otherwise not in accordance with law;

(D)  Hold and declare that CBP denied procedural due process protections owed to Vanguard; and

(E)  Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Jessica Lynd
Chunfu Yan
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

Date: February 6, 2024         (202) 626-3600